Laura L. Dunn, Esq. (pro hac vice pending)
THE FIERBERG NATIONAL LAW GROUP
1701 Pennsylvania Avenue, Suite 200
Washington, DC  20006
Telephone: (202) 351-0510
LDunn@tfnlgroup.com

Andrew Lauersdorf (OR Bar No. 980739)
Janis Puracal (OR Bar No. 132288)
MALONEY LAUERSDORF REINER PC
1111 E Burnside Street, Suite 300
Portland, OR  97214
Telephone: (503) 245-1518
acl@mlrlegalteam.com
jcp@mlrlegalteam.com

Attorneys for Plaintiff


## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **JANE DOE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. _____ |
| ) | |
| **OREGON STATE UNIVERSITY,** ) | COMPLAINT |
| ) | |
| Defendant. ) | |

## <u>COMPLAINT</u>

Plaintiff, Jane Doe ("Ms. Doe"), by and through counsel, hereby brings this action

seeking a declaratory judgment against Oregon State University ("OSU") for its discriminatory,

retaliatory, and unlawful imposition of a mutual no contact order against her after she reported a

football player for an on-campus rape and sexual assault.  On May 14, 2017, Ms. Doe reported to

Corvallis Police that fellow student Jordan Alexander Pace ("Pace") had invited her to his dorm room where he proceeded to physically pin her down and rape her. Despite graphic physical evidence collected during a forensic examination conducted at the local hospital that same night, and a criminal investigation which resulted in four felony sex offense indictments currently pending against Pace, OSU punished Ms. Doe when it received notice of the on-campus rape. Specifically, OSU imposed a mutual no contact order against Ms. Doe, *the victim*, who is not accused of any crime or misconduct. Despite its policies permitting imposition of such no contact order only against students accused of sexual misconduct, OSU continues to allow Pace access to campus as a student, a student-athlete, and now a recently hired employee of OSU. This no contact order, as imposed against Ms. Doe, is discriminatory, retaliatory, and unlawful to violate her federal rights under Title IX, as well as her right to free speech and due process, pursuant to Federal and Oregon State Constitution. Specifically, the order limits Ms. Doe's access to educational opportunities and benefits when Pace is present on campus, and it purports to limit her ability to freely communicate with law enforcement and the prosecutor's office about the case, both under threat of disciplinary action. As a result, Ms. Doe brings this declaratory judgment action against OSU regarding the mutual no contact order.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201 because Plaintiff's claim asserts a federal question and seeks a declaration.

2.      This Court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(a) because Defendant conducts business in this jurisdiction and because the conduct giving rise to this cause of action occurred in this judicial district.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant resides within the judicial district and a substantial number of the events and omissions which form the basis of this complaint occurred, and continue to occur, within this district.

## THE PARTIES

4.      Plaintiff, Jane Doe, is a 19-year-old scholarship student with a double-major and a former student athlete who recently re-enrolled at OSU after having withdrawn in the aftermath of an on-campus rape and sexual assault reportedly committed by a fellow student and football player within his dorm room.

5.      Defendant OSU is a state-provided, public institution of higher education that has been designated by Carnegie Foundation as a top research institution with its prestigious Community Engagement classification.

## FACTS RELEVANT TO CLAIMS

6.      Upon acceptance to OSU, its Scholarship Program offered Ms. Doe a four-year, renewable Academic Achievement Award "[i]n recognition of your achievements and our belief that you will continue to achieve while at OSU."  Ms. Doe accepted this award and it applied during her freshmen year.

7.      On or about May 12, 2017, during her freshmen year, Doe became briefly acquainted with Pace and they discussed meeting again.

8.      On Sunday, May 14, 2017, Pace invited Ms. Doe to his dorm room.  When she arrived at approximately 6:00 pm, Pace swiftly initiated sexual contact without Ms. Doe's consent by forcibly fondling her breast despite her verbal and physical resistance.  Despite Ms. Doe's ongoing verbal protests and physical efforts to resist him, Pace proceeded to physically pin her down in his locked dorm room and raped her on-and-off for hours.  Terrified, and eventually hearing people nearby, Ms. Doe attempted to scream for help, whereupon Pace

3

escalated his violence and increased the threat to Ms. Doe's physical safety by choking her to prevent her cries from being heard.

9.      When Pace finished his attack and permitted Ms. Doe to leave his room, she first went home and reported the rape to her parents, and then she called the Corvallis Police.  The police took her report and escorted Ms. Doe to Samaritan Health Services where she obtained immediate medical assistance for her injuries as well as submitted to a forensic examination.

10.     The Corvallis Police promptly collected the forensic evidence and initiated a criminal investigation against Pace (Case No. 2017-co-2839).

11.     Given the physical and emotional trauma caused by the sexual attack, and due to her fear of the ongoing threat Pace posed to her, Ms. Doe did not feel safe enough to return to OSU for several days after the rape.

12.     On May 17, 2017, after Ms. Doe's parents searched the OSU website trying to determine to whom the rape should be reported, Ms. Doe's mother reported the on-campus rape and sexual assault to OSU's Office of Equity Opportunities and Access ("EOA"), which is responsible for compliance with Title IX.

13.     Upon receipt of this report, OSU Equity Associate Hope Brian sent an e-mail to Ms. Doe acknowledging an "incident or experience involving potential sexual assault" and pledging that "[i]f you find that this experience negatively **impacts your academic pursuits**, your **work performance**, and/**or feelings of safety here at OSU** we do our best to help address those affects and support your safety and success."  It also stated "[o]ur goal is to support you and address impacts on your academic experience and success, as you work through this term and throughout your tenure at OSU."

14.     Despite this offer of assistance, Brian then issued a mutual "no contact directive" *against* Ms. Doe.  This order informed Ms. Doe that OSU "directs you and Jordan Pace to have

4

no contact with each other." *See* Exhibit A at 1. OSU stated it was "a <u>mutual</u> No Contact Directive, and because it asks you both to have no contact with each other this cannot be contested." *See id.* Through this order, OSU requires Ms. Doe to leave any area where Pace is present on campus and warned her against "visual or physical contact" in addition to threatening that "[f]ailure to abide by this restriction may be grounds for disciplinary action by the Office of Equity and Inclusion." *See* Exhibit A at 1 & 4.

15.    This order also purports to require Ms. Doe "not [to] communicate with University, business or government entities with the intent of affecting some right or interest of the other person," in reference to Pace. *See id.* at 4. The order includes exceptions for legal counsel and EOA staff, but it does not include exceptions for law enforcement, district attorneys, or other officials with whom Ms. Doe must communicate with regarding the ongoing criminal case against Pace. *See id.*

16.    According to its 2016 Annual Security and Fire Safety Report,[1] which contains all of its campus safety policies pursuant to the federally mandated Clery Act, 20 U.S.C. § 1092(f), under the "Procedures Institution Will Follow – Sexual Assault" subpart of the Section entitled "Important Considerations after an Incident of Sexual Assault, Domestic Violence, Dating Violence, and Stalking," OSU "will provide a 'No Contact Order' directive to *accused* party if deemed appropriate.'"

17.    Furthermore, the Annual Security Report states that campus officials, such as those at EOA, "in coordination with the Department of Public Safety, [can] take emergency action when necessary to secure the health or safety of other persons" and that such action is "against whom the action is taken (the *accused* Student) . . . [when] there is an alleged violation

---

[1] Published September 30, 2016, covering the 2016-2017 academic year.

of the Student Conduct Code" (emphasis added).  Such "emergency action" includes "[i]mmediate [s]uspension from the university" and "[r]estriction of the *accused* Student's presence on University property and/or at University events."  The Annual Security Report goes on to outline the due process provided to those accused upon issuance of such emergency actions by OSU.

18.    Despite its ability to take emergency action against Pace, only, rather than limit Ms. Doe's ongoing access to educational opportunities or benefits on its campus, OSU did not follow its own policies when it issued the mutual no contact order against her.

19.    Through EOA, OSU proceeded to conduct a prolonged disciplinary investigation against Pace under Title IX (Case No. 2016077601), which is still not resolved to date given the pending appeal in the matter.

20.    When Ms. Doe returned to campus weeks after the rape, she reported to EOA that football players were engaging in intimidation against her.  Rather than assisting Ms. Doe, EOA routed her to OSU's Department of Public Safety ("DPS").  Given her concerns for her physical safety, Ms. Doe chose not to return to campus and instead had her mother go to campus to collect her things as she unenrolled from all but one course in the Spring 2017 semester.

21.    In anticipation of Ms. Doe returning to campus for the Summer 2017 semester, on or about June 21, 2017, Ms. Doe's mother contacted DPS seeking an escort for her daughter to and from campus.  In response, OSU's Interim Public Safety Director denied this request stating: "We're not set up to give services like that," and further explaining there are too many no contact orders on campus for the department to accommodate.  He instead offered for Ms. Doe to call daily to see if an officer was available to escort her.  Finding such an arrangement too unreliable to protect her safety, Ms. Doe did not return to OSU's campus during the Summer 2017 semester.

22.    On July 12, 2017, having obtained a private attorney at personal expense to seek a civil protective order against Pace, in order to guarantee her safety if and when she returned to OSU, Ms. Doe obtained a civil agreement from Pace stating that he would voluntarily stay away from her on campus.

23.    Despite this civil agreement, OSU maintained its mutual no contact order against Ms. Doe to limit her access to campus, deny her due process, and impede her free speech.

24.    Despite having enrolled in Fall 2017 classes, Ms. Doe chose not to return to OSU fearing retaliation by Pace and others given the conclusion of the criminal investigation and the pending prosecution.  Instead, Ms. Doe took a leave of absence and only resumed courses through OSU online in Winter 2018 and Spring 2018.

25.    On November 7, 2017, Benton County Prosecutor Aime Matusko successfully sought four felony sex offense indictments against Pace from a Grand Jury (DA No. 1701315). *See generally* Exhibit B.  As part of his pre-trial release, the State of Oregon requires Pace to avoid "physical or visual contact" with Doe.

26.    Despite this indictment and criminal pre-trial release order, OSU maintained its mutual no contact order against Ms. Doe to limit her access to campus, deny her due process, and impede her free speech.

27.    Upon learning the criminal trial against Pace is set for October 2018, Ms. Doe chose to enroll in classes on campus for Summer 2018 to avoid further delays to her education. EOA had confirmed with Ms. Doe that Pace would not be present on campus during the Summer 2018 semester.

28.    In preparation for her return to campus, Ms. Doe asked EOA for a safety plan and challenged the imposition of the mutual no contact order imposed against her so she could access

OSU's campus freely without reserve.  These requests were first made to OSU's Title IX

Coordinator, Dr. Kim Kirkland, then to OSU's General Counsel, Ms. Esther Henry.

29.    In response to these requests, Equity Associate Anne Bonner of EOA responded

to direct Ms. Doe again to DPS for a safety plan.  Bonner also denied Ms. Doe's request

regarding removal of the no contact order against her on behalf of OSU, stating the following

(contrary to the Annual Security Report):  "OSU has a routine practice of implementing mutual

no contact orders to students; these orders are issued to students when requested.  I understand

you are requesting a no contact order that applies only to the Responding Student; however, a

*unilateral no contact order is not possible*, as a matter of OSU policy.  Please be assured that

mutual no contact orders are common and *not considered disciplinary*" (emphasis added).  *But

see* Exhibit A at 4 ("[f]ailure to abide by this restriction may be grounds for disciplinary action

by the Office of Equity and Inclusion.").

30.    Bonner also informed Ms. Doe for the first time that Pace "will be present and

working on campus this summer, but not enrolled in classes.  *Please be aware that the Mutual

No Contact Order remains in place*" (emphasis added).  This caused Ms. Doe immediate fear

and alarm given her imminent return to campus for classes the following week.  Ms. Doe and her

parents discussed withdrawing her from classes yet again to ensure her safety.

31.    Ms. Doe's counsel then intervened to request the policy Bonner believed

supported OSU's position regarding the mutual no contact order.  Bonner replied to provide a

website link to a "Conduct Processes" webpage that states, "No contact directives are *usually*

reciprocal and *generally* cannot be lifted without the express consent of all named parties."  This

is not the policy reflected in either the 2016 or 2017[2] Annual Security Reports, which federal law

---

[2] Published September 29, 2017, and updated December 5, 2017, the 2017 Annual Security and Fire Safety Report
covers the 2017-2018 academic year.

requires contain all its campus safety policies and procedures per the Clery Act, 20 U.S.C. § 1092(f). In fact, the term "mutual no contact order" does not appear at all in either Annual Security Report.

32.     On June 25, 2018, the first day of classes for the Summer 2018 semester, DPS finally agreed to meet with Ms. Doe and her counsel to develop a safety plan that would keep her enrolled and on campus. OSU again refused to take proactive efforts, such as providing Ms. Doe an escort or by stationing campus safety officers at various locations where Ms. Doe will be on campus, and offered only reactive efforts in response to any issues. This causes Ms. Doe ongoing fear for her safety on campus.

33.     During this discussion, OSU Director of Public Safety, Suzanne Tannenbaum, agreed with Ms. Doe and her counsel that it made no sense for OSU to impose a mutual no contact order against her given the existing civil and criminal orders only against Pace. Director Tannenbaum stated she would discuss this issue with EOA later that day.

34.     Later that same day, OSU Title IX Coordinator, Dr. Kim Kirkland, sent an email to Ms. Doe and her counsel stating that it is "not EOA's practice to issue one-way no contact orders between students" (contradicting its 2016 and 2017 Annual Security Reports). Dr. Kirkland went on to state "[p]lease consider this communication as OSU's final position on this matter . . . if [Ms. Doe] believes the mutual no contact order is preventing her from accessing something on campus that she needs please let us know."

35.     Dr. Kirkland also recognized in her email the fact that there is an ongoing criminal case against Pace to declare it has "no connection to Oregon State University."

36.     Given OSU's ongoing imposition of the mutual no contact order against Ms. Doe, she is currently limited in her access to campus and must avoid areas where Pace is present. Specifically, the safety plan developed by DPS requires her to stay on the west side of campus

where her classes and job are located to avoid the east side of campus where OSU is employing Pace.

37.     Under this safety plan, Ms. Doe is also limited in the hours she may access the Dixon Recreation Center.  Specifically, OSU only allows her use of such facilities in the second half of the day despite her express concern of staying late on campus without the promise of an escort from the DPS.

38.     In response to the invitation from Dr. Kirkland in her email dated June 25, 2018, Ms. Doe did inform OSU that the mutual no contact order is preventing her from accessing the Dixon Recreation Center during the hours convenient for her schedule and safety, but OSU, by and through DPS, has maintained this limitation upon Ms. Doe's access to campus facilities as part of the mutual no contact order.

## CLAIMS FOR RELIEF

### COUNT I
### (*Sex Discrimination & Retaliation under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, et al.*)

39.     Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

40.     Defendant OSU is a state-based, public educational institution in receipt of federal funding from the U.S. Department of Education and thus is subject to the requirements of Title IX of the Education Amendments Act, pursuant to 20 U.S.C. §§ 1681 *et seq*.

41.     Ms. Doe was an enrolled student at OSU at the time of the reported campus rape, as well as the initial imposition of the mutual no contact order, and she currently is enrolled for classes despite having taken a leave of absence in the interim given her concerns for safety.

42.    On May 17, 2017, Doe's parents provided OSU with actual notice that Ms. Doe had reported Pace for an on-campus rape, a severe form of sexual harassment prohibited under Title IX, on May 14, 2017.

43.    That same day, OSU responded to discriminate and retaliate against Ms. Doe in response to her report that a football player sexually assaulted and raped her by issuing an unlawful mutual no contact order against her as the victim of the reported sexual misconduct. OSU prohibited Ms. Doe from contesting this order.

44.    Through this order, and under threat of disciplinary action, OSU has limited and continues to limit Ms. Doe's access to educational opportunities and benefits on campus if and when Pace is present, which is counter to her rights under Title IX.  *See* Exhibit A.  Such a limitation in response to her report of sexual misconduct to access her rights under Title IX is the definition of retaliation.

45.    Through this order, and under threat of disciplinary action, OSU also impedes her right to free speech by expressly prohibiting her from speaking to government officials and others about Pace.  *See* Exhibit A.  This limitation is both absurd and offensive given that Ms. Doe is actively involved with law enforcement and the prosecutor's office in preparing for the criminal trial against Pace for his alleged crimes against her.  The order therefore violates the Fourteenth Amendment to further evinces OSU's discrimination and retaliation against Ms. Doe in response to her report of campus rape and sexual assault by a football player.

46.    OSU's policies, under both the 2016 and 2017 Annual Security Reports, which should contain the entirety of their campus safety policies, pursuant to the Clery Act, 20 U.S.C. § 1092(f), allow the imposition of the no contact order against Pace, only, as the student accused of sexual misconduct and posing a threat to student health and safety.  Therefore, OSU further evinces OSU's discrimination and retaliation against Ms. Doe by violating her Due Process

under the Fourteenth Amendment having not been accused of any misconduct or criminal

wrongdoing.

47.    OSU's imposition of the mutual no contact order against Ms. Doe to perpetuate

the hostile sexual environment created by the on-campus rape and sexual assault is a form of sex

discrimination against Ms. Doe.

48.    As a result of OSU's discriminatory, retaliatory, and unlawful imposition of a

mutual no contact order against Ms. Doe, she withdrew from classes in Spring 2017, failed to

enroll in Summer 2017, unenrolled to take a leave in Fall 2017, was limited to online classes in

Winter 2018 and Spring 2018, and now limits her access to educational opportunities and

benefits on campus during the Summer 2018 semester.

49.    Given OSU's discriminatory, retaliatory, and unlawful conduct directed at Ms.

Doe solely for reporting one of its football players for campus sexual assault and rape, Ms. Doe

will transfer to another institution of higher education after this semester to ensure her ability to

access education free from a sexually hostile environment.

## COUNT II
### (*Violation of First Amendment rights, U.S. Const., Amend. XIV, § 1*)

50.    Plaintiff incorporates by reference the allegations of facts contained in the

previous paragraphs, as if fully set forth herein.

51.    Under the Fourteenth Amendment, the State is prohibited from "depriv[ing] any

person of life, liberty or property, without due process of law; nor deny to any person within its

jurisdiction the equal protection of the laws."

52.    Defendant OSU is a state-provided, public institution of higher education subject

to the Fourteenth Amendment.

53.    On May 17, 2017, in response to Ms. Doe's report that a fellow student and football player sexually assaulted and raped her, OSU imposed a mutual no contact order against her which requires Doe "not [to] communicate with University, business or *government entities* with the intent of affecting some right or interest of the other person" (referring to Pace) with exceptions for legal counsel and EOA staff, but not for law enforcement, district attorneys, or other officials Ms. Doe must communicate with given the ongoing criminal case against Pace. *See* Exhibit A at 4 (emphasis added).

54.    OSU's mutual no contact order also states that "[f]ailure to abide by this restriction may be grounds for disciplinary action by the Office of Equity and Inclusion" to ensure Ms. Doe's compliance. *See id.* at 1 & 4.

55.    Pursuant to this order, OSU purports to unlawfully limit Ms. Doe's right to free speech in a way that interferes with her ability as a victim of crime to prepare for the criminal trial or otherwise seek the benefits and support of the State of Oregon during the pendency of the criminal matter against Pace.

56.    Such efforts to "gag" Ms. Doe serve only to advantage OSU football player Pace, who currently faces four counts of felony sex offense. *See* Exhibit B.

### COUNT III
### (*Violation of Due Process, U.S. Const., Amend. XIV, § 1*)

57.    Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

58.    Under the Fourteenth Amendment, the State is prohibited from "depriv[ing] any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

59.    Defendant OSU is a state-provided, public institution of higher education subject to the Fourteenth Amendment.

60.    On May 17, 2017, OSU issued a "no contact directive" against Ms. Doe, *the victim* of reported sexual offenses and sexual misconduct who is not accused of any criminal wrongdoing or campus misconduct herself.  This order is the result of Ms. Doe's report of the campus sexual assault and rape to OSU and nothing else.

61.    Through this order, and under threat of disciplinary action, OSU has limited and continues to limit Ms. Doe's access to educational opportunities and benefits on campus if and when Pace is present, which is counter to her due process rights and Title IX.  *See* Exhibit A.

62.    OSU's policies, under both the 2016 and 2017 Annual Security Reports, which should contain the entirety of their campus safety policies, pursuant to the Clery Act, 20 U.S.C. § 1092(f), allow the imposition of the no contact order against Pace, only, as the student accused of sexual misconduct and posing a threat to student health and safety.  Therefore, OSU violates her due process under the Fourteenth Amendment.

## COUNT IV
### (*Violation of Free Speech, Or. Const., Art. 1, § 8*)

63.    Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

64.    Under Section 8 of Article 1 the Constitution of the State of Oregon, citizens are guaranteed freedom of speech.

65.    Defendant OSU is a state-provided, public institution of higher education subject to the Constitution of the State of Oregon.

66.    On May 17, 2017, in response to Ms. Doe's report that a fellow student and football player sexually assaulted and raped her, OSU imposed a mutual no contact order against

her that requires Doe "not [to] communicate with University, business or *government entities* with the intent of affecting some right or interest of the other person" (referring to Pace) with exceptions for legal counsel and EOA staff, but not for law enforcement, district attorneys, or other officials Ms. Doe must communicate with given the ongoing criminal case against Pace. *See* Exhibit A at 4 (emphasis added).

67.    OSU's mutual no contact order also states that "[f]ailure to abide by this restriction may be grounds for disciplinary action by the Office of Equity and Inclusion" to ensure Ms. Doe's compliance.  *See id.* at 1 & 4.

68.    Pursuant to this order, OSU purports to unlawfully limit Ms. Doe's right to free speech in a way that interferes with her ability as a victim of crime to prepare for the criminal trial or otherwise seek the benefits and support of the State of Oregon during the pendency of the criminal matter against Pace.

69.    Such efforts to "gag" Ms. Doe serve only to advantage OSU football player Pace, who currently faces four counts of felony sex offense.  *See* Exhibit B.

## COUNT V
### (*Violation of Due Process, Or. Const. Art. 1, § 10*)

70.    Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

71.    Under Section 10 of Article 1 the Constitution of the State of Oregon, citizens are guaranteed due process.

72.    Defendant OSU is a state-provided, public institution of higher education subject to the Constitution of the State of Oregon.

73.    On May 17, 2017, OSU issued a "no contact directive" against Ms. Doe, *the victim* of reported sexual offenses and sexual misconduct who is not accused of any criminal

15

wrongdoing or campus misconduct herself.  This order is the result of Ms. Doe's report of the

campus sexual assault and rape to OSU and nothing else.

74.     Through this order, and under threat of disciplinary action, OSU has limited and

continues to limit Ms. Doe's access to educational opportunities and benefits on campus if and

when Pace is present, which is counter to her Due Process rights and Title IX.  *See* Exhibit A.

75.     OSU's policies, under both the 2016 and 2017 Annual Security Reports, which

should contain the entirety of their campus safety policies, pursuant to the Clery Act, 20 U.S.C. §

1092(f), allow the imposition of the no contact order against Pace, only, as the student accused of

sexual misconduct and posing a threat to student health and safety.  Therefore, OSU violates her

Due Process under the Fourteenth Amendment.

## COUNT VI
### (*Violation of Crime Victim Rights, Or. Const., Art. 1, § 42*)

76.     Plaintiff incorporates by reference the allegations of facts contained in the

previous paragraphs, as if fully set forth herein.

77.     Under Section 42 of Article 1 the Constitution of the State of Oregon, citizens

who are victims of crime are guaranteed certain rights, including the right to be heard during

criminal proceedings.

78.     Defendant OSU is a state-provided, public institution of higher education subject

to the Constitution of the State of Oregon.

79.     On May 17, 2017, in response to Ms. Doe's report that a fellow student and

football player sexually assaulted and raped her, OSU imposed a mutual no contact order against

her that requires Doe "not [to] communicate with University, business or *government entities*

with the intent of affecting some right or interest of the other person" (referring to Pace) with

exceptions for legal counsel and EOA staff, but not for law enforcement, district attorneys, or

other officials Ms. Doe must communicate with given the ongoing criminal case against Pace. *See* Exhibit A at 4 (emphasis added).

80.    OSU's mutual no contact order also states that "[f]ailure to abide by this restriction may be grounds for disciplinary action by the Office of Equity and Inclusion" to ensure Ms. Doe's compliance.  *See id.* at 1 & 4.

81.    Pursuant to this order, OSU purports to unlawfully limit Ms. Doe's right to free speech in a way that interferes with her ability as a victim of crime to prepare for the criminal trial or otherwise seek the benefits and support of the State of Oregon during the pendency of the criminal matter against Pace.

82.    Such efforts to "gag" Ms. Doe serve only to advantage OSU football player Pace, who currently faces four counts of felony sex offense.  *See* Exhibit B.

### REQUEST FOR RELIEF

WHEREFORE Plaintiff, Jane Doe, respectfully requests that this Court issue declaratory judgment finding the mutual no contact order (a) discriminatory and retaliatory in violation of Title IX, and (b) unlawful under the First and Fourteenth Amendments in violation of rights to free speech and due process; and award all attorneys' fees and costs necessary for Ms. Doe to bring this declaratory judgment action.

Dated: July 31, 2018                    Respectfully submitted,

                                        /s/ Laura L. Dunn
                                        Laura L. Dunn, Esq. (*pro hac vice* pending)
                                        THE FIERBERG NATIONAL LAW GROUP

                                        /s/ Andrew Lauersdorf
                                        Andrew Lauersdorf (OR Bar No. 980739)
                                        Janis Puracal (OR Bar No. 132288)
                                        MALONEY LAUERSDORF & REINER PC


                                        *Attorneys for Plaintiff*